The Honorable, the Judges of the United States Court of Appeals for the Foreign Circuit. Thank you. Please be seated. Our next case is U.S. v. Wilburn. Mr. and Mrs. Zimorowski. Correct, Your Honor. We'll be glad to hear from you. May it please the Court, my name is Rachel Zimorowski and I represent the appellant, Re'Shaun Wilborne. The issue for the Court's review in this case is whether the District Court clearly erred in concluding that the search of Mr. Wilborne's backpack fell into an exception to the warrant requirement, specifically the Inevitable Discovery Doctrine and the Inventory Procedure. In order to qualify under the Inevitable Discovery Doctrine, the government must prove that the law enforcement would have discovered the evidence through lawful means, which includes through a valid inventory search that is done in good faith pursuant to standardized criteria. As the Supreme Court noted in Nixby-Williams, speculation doesn't come into play here. Demonstrated historical facts are what are critical for the Inevitable Discovery analysis. And here, what we have is a police officer that testified at the Supreme Court hearing that essentially there are no rules for inventorying property. What he did point to was a single paragraph-long policy of the Charleston Police Department that specifically defines two circumstances in which the search of an arrestee's personal effects can be justified. It doesn't provide any sort of criteria for determining, one, what those personal effects are and when they can be seized when you're arresting a person, and two, the procedure for actually searching those items and when it would be done. What about when they take them to jail? Your Honor, in this case, the officer did testify that typically when items have been properly seized from an arrestee, again, did not specify how that is determined, when those items go to the jail that they certainly would be searched, you're not allowed to have your things with you at the jail. But in this particular case, Mr. Wilborn's items did not even go to the jail with him. The police actually released two of the bags to his mother at the police station, never made it to the jail, and then the first bag, the backpack with the contraband in it, was kept at CPD itself. The reason why the lack of any... But if that backpack had gone with him to the jail, it would have been searched. Your Honor, the backpack did not go with him to the jail. I understand that, but if he had the backpack and they were going to take him to jail, the backpack would have been searched before they got to the jail. The officer's testimony on, again, how the search would be conducted, particularly the regional jail search, did not specify whether it would open and close containers, how thorough of a search or any kind of standardized criteria for searching a bag and what would be found in it. And the reason the criteria are so important is because it has to be administered in good faith. It can't be a pretext to discover incriminating evidence, to rummage through somebody's belongings, which is actually exactly what happened at the scene in this case, which the district court judge determined was not a proper inventory at the scene. Charleston Police Department had no policy requiring the search of bags before an arrestee is transported. And instead of going through any sort of standardized procedure, they pulled the bag from the inside of a store, which was far away from Mr. Wilborn when he was arrested, pulled it out, placed it on the hood of a cop car. But the question, counsel, right, is what would have happened, right? We're not focused on that point in time that you're talking about. We're assuming that was unconstitutional, right, and moving on to if they had followed their routine practices, which can be established by written standards or by testimony about what's standard, if they had followed those standard practices, would they inevitably have opened the backpack during the inventory and seen the gun? And I think that the problem here is that there was a single officer who testified at the suppression hearing. He was not familiar with the Charleston Police Department policies. He could not provide any sort of definitive criteria or anything that would have cabined the discretion of the officers, something that was standardized, repeatable, that would not serve as a pretext to rummage through any items that could be found around an arrestee for incriminating evidence. So at bottom judge, our argument is that the officer's testimony was not sufficiently clear on that front, that the only written policy that was even discussed was a justification for performing searches of an arrestee's belongings.  Which property they would want to seize from an arrestee at the time of arrest, how exactly those items would be searched. But in United States v. Bullock, this court has said that the officer's not required to give a step-back testimony as to the inventory search policy. And so here the officer did testify as to his practice and how he handled inventory searches. And do you not find that his testimony regarding his practice and how he handled it enough? Because there's no requirement that he has to sit there and give you a step-by-step inventory search policy testified to that. That's correct, Your Honor. The case law is clear that you do not need to set forth in that amount of detail what the inventory search policy is, but there needs to be enough evidence presented by the government to enable the district court to determine that there are standardized criteria that cabin the individual officer's discretion. And frankly, in this case, where there is strong evidence that it was a pretextual search, that they were very interested in getting into that particular backpack. They did not search the other two bags at the scene. And they were very invested in opening that bag in front of Mr. Wilborn and letting him see what they had discovered. You know, ostensibly so that he would talk about it. It is hard. The inevitable discovery doctrine always asks, you know, what would have happened absent an unconstitutional action? In this case, it is unclear what would have happened had the officers not discovered the firearm at the scene, whether they would have taken those items back with Mr. Wilborn when he was arrested, whether they would have left them at the Dollar General. Their decision-making was led by the fact that they wanted to get inside that backpack and they knew that there was a gun in there that they were trying to get him to admit to. I have a question about this. You said it's a pretext, but I don't know if the officers even knew that there was a backpack until the manager of the store brought the bag out to them. And I believe that was after he was arrested. So I have a question regarding, I guess, this theory of pretext. They didn't even know there was a bag until the manager brought the bags out of the store. Well, actually, the manager or the clerk told the officers that his bags were inside the store. But I'm sorry, Your Honor, can you repeat the question? You're saying that it was a pretext for them to get into the, that they were searching for a gun or looking for him to have a gun, but initially they didn't know until it was brought to their attention by the store clerk or manager, I can't remember which one it was, that he had bags in the store. Your Honor, the district court determined that there is no Charleston Police Department policy that requires or really even authorizes the opening of bags prior to an arrestee's initial transport. That was a specific finding in the district court's order, and I think given the fact that the district court said that they don't have a policy that allows or permits them to look through arrestees' personal effects prior to putting them in the cop car, demonstrates that what they did in this case can be viewed as a pretextual action that wasn't taken in good faith to inventory the items that were inside the bag. The officer repeatedly testified that the policy that he is attempting to enforce differs on a case-by-case basis, that in fact, you know, he would give property to a family member or somebody else on the scene potentially. There was no uniform or, again, standardized procedure that he was able to identify, and, you know, beyond even a step-by-step analysis, again, he was unable to even define what a personal effect is. What he testified to is simply insufficient for the district court to determine that this evidence inevitably would have or could have been discovered through the policy and procedures that were in place at the time. Do we have any other questions? Thank you very much. You've got some rebuttal time, Ms. Coleman. Thank you, Your Honor. May it please the court. The district court did not clearly err when it denied Mr. Wilburn's motion to suppress based on the inevitable discovery doctrine. The record is clear that the firearm in Mr. Wilburn's possession inside the black backpack would have been inevitably discovered during his processing at the Charleston Police Department. When the district court credited Detective Hilbert's testimony and when looking at the evidence in the light most favorable to the government, Mr. Wilburn was arrested on an outstanding warrant, not because officers believed he had a firearm, not because they were trying to get into the backpack. At the time of his arrest, the court comes out and says, he's got property in here. They took possession of that property. The district court found that it was proper for them to take custody of those bags. They searched the black backpack at the scene, but the officer also testified that he could see inside the clear bag and could tell that it was closed, and he could see inside the open double bag and believed it to be closed. They didn't search those other two at the scene. But more importantly, he testified that he went to the station, he followed the standard procedures for an arrest at the Charleston Police Department, which included writing a report, fingerprinting, criminal complaints, and completing the property and evidence form, and that at the station he searched the other two bags in order to complete that form where he logs property as either property or evidence. It is inevitable that had the black backpack not been searched at the scene, it would have been searched by the officer when he was doing his processing. He testified that he does that to prevent claims of theft and for safekeeping of a detainee's property. And further, that when there's an arrest and someone's going to the jail, all their property has to be searched. He inventoried the property on his CPD 115 form, closed, and he inventoried the black backpack as potential evidence. He testified that all of this was consistent with practice and that he was following standard practice of the Charleston Police Department when he searched and inventoried the property, and therefore it is inevitable that had the black backpack not been searched, it would have been searched during processing along with the other two bags. If the court doesn't have any further questions for me, I'll... Thank you very much. What do you want to tell us in rebuttal, Ms. Zemirowski? You've got some time if you want to use it. Your Honor, the government points to the CPD 115, the reports that were done at the station following the arrest in support of the fact that this is a justifiable standardized search, but I would ask the court to note that those forms do not actually include an inventory. They just include the list of the container. They don't identify any specific items. And the purpose of the inventory search procedure is to create an inventory. It has to be directed towards that end. And here, what we have is an officer who elected to search one bag at the scene, not the other two, and then when he returned to the station, listed the containers that he seized and did not actually inventory the contents. In all of these circumstances, this is not... doesn't rise to the standard of proof that this court has previously approved in terms of the inevitable discovery inventory search doctrine, and we would ask the court to find that this report clearly aired in making that conclusion. Thank you. All right, thank you very much. If the clerk will adjourn us until tomorrow, we'll then come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, Allison J. Rushing, DeAndrea Gist Benjamin